IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SENTRY INSURANCE A MUTUAL
COMPANY,

                            Plaintiff,                        OPINION AND ORDER

        v.
                                                             13-cv-386-wmc

B & H HEALTH CARE SERVICES, INC.
d/b/a Nursing Personnel Homecare,

                            Defendant.


In this civil action, plaintiff Sentry Insurance A Mutual Company claims defendant B & H Health Care Services, Inc. d/b/a Nursing Personnel Homecare breached its contract to reimburse amounts due under a workers compensation policy.  (2d Am. Compl. (dkt. #39-1).)  Sentry seeks damages in the total amount of $262,286.00, plus interest, costs and attorney's fees.  The court previously found defendant in default under Fed. R. Civ. P. 55(a) for failing to answer timely the second amended complaint and for defendant's earlier lack of diligence (if not misconduct) with respect to this lawsuit.  The court further warned B & H that "any future failure on defendant's part to comply strictly with deadlines will be deemed a default."  (2/25/14 Order (dkt. #72) 1-2 (quoting 1/13/14 Order (dkt. #54) 2); *see also* 3/28/14 Order (dkt. #88) (denying defendant's motion for reconsideration).)  In that order, the court also dismissed defendant's counterclaims, except to the extent they warrant an off-set to any damage award, and set a hearing on damages for August 4, 2014.[1]  Now pending before the court is plaintiff's

---

[1] This hearing was subsequently moved to August 7, 2014.

motion for summary judgment on what remains of defendant's counterclaims (dkt. #79), which the court will grant in part and deny in part.

UNDISPUTED FACTS[2]

**A. Terms of Agreement**

Effective January 1, 2007, Sentry issued a "retrospective" workers compensation policy to B & H, Policy No. 90-16720 (the "Policy"). The Policy was in effect from January 1, 2007, through December 31, 2011.

Sentry and B & H also entered into a written Casualty Insurance Agreement effective January 1, 2011, in which Sentry was defined as the "Company" and B & H was the "Insured." (Affidavit of John E. Murray ("Murray Aff."), Ex. 5 (dkt. #84-5) pp.35-50.) Paragraph 2.08 of the 2011 Casualty Agreement provides in pertinent part:

> All amounts due the Insurers by the Insured shall be paid to the Company within thirty (30) days of date of invoice submitted to either the Insured or its representative, subject to Section 6.02.

(*Id.* at p.39.) Paragraph 6.02 further provides:

---

[2] Defendant removed this action to federal court, thereby selecting this forum, but has since repeatedly failed to follow this court's most basic rules and procedures. In yet another example, defendant filed no response to proposed findings of fact as required by this court's summary judgment procedures. (Prelim. Pretrial Conf. Order (dkt. #7) p.13-14.) Instead, defendant simply filed a counterstatement of findings of fact. Moreover, "[u]nless the responding party puts into dispute a fact proposed by the moving party, the court will conclude that the fact is undisputed." (*Id.* at p.14.) Although certainly meriting this sanction based on past misconduct and earlier warnings, the court has nevertheless considered defendant's proposed counterstatement to the extent in conflict with plaintiff's proposed findings of fact as set forth above.

2

> The Insured's failure to timely pay any of the Obligations shall not be considered a default under this Section 6 if the Insured:
>
> a.  Disputes, in good faith, an amount owed;
>
> b.  Presents to the Company within thirty (30) days after such amount was due and payable a written explanation of the basis for the Insured's disagreement with the amount stated by the Company as owed; and
>
> c.  Is otherwise current with respect to all other Obligations.

(*Id.* at p.45.)

"Obligations" is defined elsewhere in the contract as "collectively the Insured's obligations to pay, whether now or in the future, all amounts due or as estimated by the Insurers any Company in accordance with the Sentry Policies and this Agreement." (*Id.* at p.36.)  Paragraph 6.01 of the Agreement also defines "Events of Default," including "[f]ailure of the Insured to make any payment under this Agreement or any Sentry Policy when due including payment to any claims service company or to an account for funding loss payments." (*Id.* at p.44.)  Finally, paragraph 7.01 provides "Options in Event of Default," including permitting Sentry to "make a determination of the Obligations and declare the entire amount of the Obligations, whether liquidated, determined, contingent or estimated immediately due and payable." (*Id.* at p.45.)

On or about January 3, 2013, Sentry sent B & H a letter demanding payment of the outstanding balance, totaling $246,695.48.  (Murray Aff., Ex. 5 (dkt. #84-5) p.59.)

### B.  B & H's Failure to Pay

B & H has paid *nothing* to Sentry since December 2011.  Subsequently, Sentry has sent B & H invoices for past due premiums and expenses incurred in administering the covered workers compensation claims.  (Murray Aff., Ex. 5 (dkt. #84-5) pp.51-53.)  More specifically, B & H neither paid the December 2011 Invoice, nor provided Sentry a written explanation of its disagreement with the amount of that invoice.

In October 2012, Sentry sent B & H another invoice for amounts past due and additional expenses incurred in administering the covered workers compensation claims.  (*Id.* at pp.54-56.)  Again, B & H did not pay the invoice or give Sentry a timely written explanation.  B & H also was not current with its Obligations at the time of the October 2012 invoice.

In May 2013, Sentry submitted yet another invoice.  (*Id.* at pp.57-58.)  B & H never paid that invoice nor provided Sentry with a written explanation of any disagreement.  B & H was also behind on its Obligations at the time of the May 2013 invoice.

Finally, Sentry submitted additional invoices in January 2014 and February 2014.  (Affidavit of Sue Sadogierski ("Sadogierski Aff."), Exs. 1-2 (dkt. ##83-1, 83-2).  Once again, B & H failed to pay these invoices or provide a written explanation of any disagreement.  B & H remains in arrears on its Obligations under the Agreement.

### C. Application of B & H's Collateral to Outstanding Debt

Pursuant to paragraph 4.02 of their Agreement, B & H gave Sentry a Letter of Credit in the Amount of $140,000.00 to secure its Obligations. (Murray Aff., Ex. 5 (dkt. #84-5) p.40 ("On or before the effective date of this Agreement, the Insured shall provide the Company with a Letter of Credit in the principal amount of $140,000 in order to secure the Obligations.").  In early January of 2013, Sentry sent B & H a letter stating that it "will be drawing upon the $140,000 Letter of Credit that we hold."  At some point, pursuant to paragraph 205 of the Agreement, B & H also deposited $8,000.00 into a Loss Fund controlled by Sentry.  (*Id.* at p.38 ("The Insured shall deposit with the Company the amount of $8,000 (the 'Loss Fund') to be used by the Company to pay loss and expense payments within the Insured's retention.").)

Sentry applied the $140,000 Letter of Credit and the $8,000 contribution to the Loss Fund against B & H's outstanding debt to Sentry.  Sentry contends that the total amount of B & H's Obligations (i.e., all amounts past due and estimated future expenses) totals $262,286.00, of which $202,797.17 is the amount due for unpaid premiums and actual expenses, and $59,488.83 represents Sentry's estimate of the present value of the future expenses it will incur to administer covered workers compensation claims.  (Pls.' PFOFS (dkt. #80) ¶¶ 39-40 (citing Sadogierski Aff. (dkt. #83) ¶ 7; Affidavit of Edward Peck (dkt. #82) ¶ 2).)

OPINION[3]

Defendant asserts two counterclaims against plaintiff.  In the first counterclaim, B & H alleges that Sentry breached the Agreement by failing to "proficiently, expeditiously, expertly, and competently process and administer each Worker's Insurance Compensation Claim and thereby to keep the cost to Nursing Personnel to the lowest cost possible."  (Answ. and Counterclaims (dkt. #5) pp.7-8.)[4]  In the second counterclaim, B & H alleges that Sentry failed to account for the amounts held by it as collateral in seeking payment due under the Agreement.  (*Id.* at p.8-9.)

## I.  First Counterclaim:  Breach of Contract

Sentry moves for summary judgment on B & H's breach of contract counterclaim on the basis that the Casualty Insurance Agreement forecloses any challenge based on Sentry's alleged failure to properly administer the account, because B & H failed to dispute any amount due in writing within 30 days of receipt of the invoice, as required under paragraph 6.02 of the Agreement.  In support of this argument, Sentry looks to

---

[3] The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  Plaintiff Sentry is a corporation organized under the laws of Wisconsin with its principal place of business also in Wisconsin.  (Pl.'s PFOFs (dkt. #80) ¶ 1.)  B & H is a corporation organized under the laws of New York with its principal place of business also in New York.  (*Id.* at ¶ 2.)  The amount in controversy exceeds $75,000.

[4] Defendant alleges that a "fiduciary relationship exists by and between Sentry and [B & H] by virtue of the issuance and existence of the Policy and the Casualty Insurance Agreements and by virtue of the services hereinafter described to be rendered by Sentry on behalf of Nursing Personnel."  (Answ. & Counterclaims (dkt. #5) p.7.)  B & H does not, however, allege that Sentry breached its fiduciary duties (assuming such duties existed in the first instance).

Wisconsin substantive law, and specifically to case law requiring an insured to comply with unambiguous deadlines.  (Pl.'s Opening Br. (dkt. #81) 3, 6 (citing *RTE Corp. v. Maryland Cas. Co.*, 74 Wis. 2d 614, 630 (1976) (holding that delay in reporting loss as required by unambiguous terms of insurance contract constituted noncompliance as a matter of law)).)

    As an initial point, B & H challenges whether Wisconsin law should apply to this contract dispute, positing instead that New York law should apply, largely because New York is the location of the insured's risk and that factor should receive the greatest weight in determining which state's law should apply.  (Def.'s Opp'n (dkt. #93) 4-5.) The parties agree that as the forum state, Wisconsin's choice of law principles determine which state's substantive law governs the action.  *See Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1148 (7th Cir. 2013).

    That analysis would normally require consideration of several factors, but the court need not do so here, since "[u]nder Wisconsin's choice of law algorithm, if the laws of the competing states are the same, a court must apply Wisconsin law."  *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 987 (7th Cir. 2005); *see also NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co.*, 736 F.3d 1054, 1058 (7th Cir. 2013) (explaining that if the law is in accord across the possible states that "choice-of-law concerns" are obviated); *Kochert v. Adagen Med. Intern., Inc.*, 491 F.3d 674, 677 (7th Cir. 2007) ("Where the parties have not identified a conflict in state law, we will generally apply the law of the forum state.").  Under the law of both Wisconsin and New York, insurance contracts are governed by the same statutory interpretation rules as any other

contract, requiring courts to apply the clear and unambiguous terms of an insurance policy.  (*See* Pl.'s Reply (dkt. #102) 5 (citing New York and Wisconsin law).)

With that issue aside, B & H posits two principal bases for denying summary judgment on its counterclaims.  *First*, B & H argues that "the invoices were not submitted under the Casualty Agr.  Rather, B & H contends the invoices "were submitted under the Workers Comp Policy," and "[t]here is no provision in the Workers Comp Policy comparable to the provision in the Casualty Agr … requir[ing] a protest to be levied within 30 days."  (Def.'s Opp'n (dkt. #93) 9.)

However, the Agreement expressly governs payment of the amounts due based on Sentry's issuance of the workers compensation policy.  (Murray Aff., Ex. 5 (dkt. #84-5) p.35 (listing Workers' Compensation Policy 90-16720-01).)  Moreover, the recital to the Agreement provides in pertinent part:

> The Policies set forth the definitions of certain of the terms used in this Agreement and describe the payments to be made by the Insured.
>
> The Company, the Insurers and the Insured desire to supersede certain payment provisions in the Policies.

(*Id.*; *see also id.* at ¶ 10.01, p.47 (stating that the Agreement "supersedes the provisions of the Sentry Policies to the extent necessary to eliminate such conflict").  As such, there is no credible argument that the Agreement does not govern payments owed by B & H to Sentry.

*Second*, relying on its expert, B & H argues that compliance with the 30-day requirement "would not be feasible" because "the determination of whether or not a payment is warranted or reasonable may not be readily determined within 30 days."

8

(Def.'s Opp'n (dkt. #93) 9.)   In its reply brief in support of its motion for summary judgment, Sentry explains that a "retrospective" workers compensation policy "charges an insured a premium based on the anticipated cost of managing, administering, defending and resolving workers compensation claims.   Premiums are adjusted retrospectively to reflect the actual cost of the insured's workers compensation claims.   These adjustments may result in an increase in the premium charge or a refund to the insured."   (Pl.'s Reply (dkt. #102) 2 (citing *Home Indemnity Co. v. Farm House Foods Corp.*, 770 F. Supp. 1339, 1342-43, 47-48 (E.D. Wis. 1991)).)

While the amounts may be adjusted -- and, indeed, the invoices submitted by Sentry show adjustments based on an audit -- defendant has failed to explain how these future adjustments undermine its ability to dispute timely amounts due in the invoices. Even if there were arguable difficulty in abiding by this provision, the terms of the Agreement expressly required B & H to submit in writing any disputes about the amounts due and owing in the invoices.   By failing to comply with this provision, B & H has waived its opportunity to do so now.

## II. Second Counterclaim: Offset for Treatment of Collateral

Plaintiff also moves for summary judgment on defendant's counterclaim seeking an offset for Sentry's alleged failure to account for the amounts held by it as collateral in seeking payment due under the Agreement.   As described above, plaintiff represents that it has applied the $148,000 offset to the amount it is seeking in its second amended complaint, thus mooting this counterclaim.   Defendant opposes the motion on the basis

that it is impossible to reconcile the amount plaintiff seeks in its second amended complaint with the amount in the prior invoice less that offset.  (Def.'s Opp'n (dkt. #93) 8.)  Because the court agrees with B & H, on this point, it will deny plaintiff's motion for summary judgment on this counterclaim.

At the same time, plaintiff admits that the amount due *should* be offset by the $140,000 Letter of Credit and $8,000 payment to the Loss Fund, and indeed claims to have done so, the only remaining issue for trial will be for Sentry to prove that it actually applied this offset.  On that issue, the court would be remiss not to note its agreement with defendant that it is difficult to reconcile the amount Sentry claims is currently due on the various invoices -- ranging from $140,800.36 to $154,031.23  (Murray Aff., Ex. 5 (dkt. #84-5) pp.51-58; Sadogierski Aff., Exs. 1-2 (dkt. ##83-1, 83-2)) -- with the $202,797.17 amount Sentry now claims is due for unpaid premiums and actual expenses incurred in administering the covering claims, especially after application of the $140,000 line of credit and $8,000 contribution to the loss fund that Sentry claims to have applied to the amount due.  Sue Sadogierski, a Premium Services Accountant Senior Specialist, simply states in her declaration without any cited support that "[t]he aggregate amount B & H owes Sentry for unpaid premiums and expenses incurred to administer covered claims is $202,797.17."  (Sadogierski Aff. (dkt. #83) ¶ 7.)  Similarly, Edward Peck, an Actuary with responsibility for Sentry's national accounts, avers that he has calculated Sentry's estimate of future amounts due as $59,488.83, without explanation or supporting materials.  (Peck Aff. (dkt. #82) ¶ 2.)

Of course, plaintiff was not obligated to prove its actual damages in moving for summary judgment on defendant's counterclaims.  Instead, plaintiff will need to explain the basis for its request of damages of over $260,000 and provide evidence in support of that explanation at the August 7, 2014.

ORDER

IT IS ORDERED that plaintiff Sentry Insurance A Mutual Company's motion for summary judgment on defendant B & H Health Care Services, Inc. d/b/a Nursing Personnel Homecare's counterclaims (dkt. #79) is GRANTED IN PART and DENIED IN PART as set forth above.

Entered this 25th day of July, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge